# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | JUDGE |
| vs. | **INDICTMENT** |
| LEO SHIMIZU, a/k/a "Lil Droppy," | 18 U.S.C. § 1956(h) |
| Defendant. | **FORFEITURE ALLEGATION** |

2:21 cr 147

Judge Morrison

## THE GRAND JURY CHARGES:

All dates and times in this Indictment are alleged to be "on or about," "in and around," or "through and including" the specific dates stated.

### INTRODUCTION

At times relevant to this Indictment:

1. Beginning in 2015, and continuing thereafter up to October 2019, the defendant, **LEO SHIMIZU (a/k/a "Lil Droppy")**, T.B., D.R. (not charged in this Indictment), and other individuals, both known and unknown to the Grand Jury, engaged in a conspiracy to launder the proceeds of an online vehicle-sale scam. The perpetrators of this scheme to defraud created online sales listings on websites such as Craigslist.org for vehicles they were pretending to sell. In truth, the perpetrators lacked any ownership of the vehicles they offered for sale. The perpetrators of the scam then enticed buyers by below-market pricing and transactional security allegedly offered through eBay's Buyer Protection Program—a purported escrow service. In fact, the perpetrators had no relationship with eBay, and the offer of eBay Buyer Protection was fraudulent.

2. As part of the scheme to defraud, victims would initiate contact with an online "seller," who was using a fake name and backstory in connection with the listing. Oftentimes, the sellers stated that they needed to sell the vehicle quickly because they were a member of the military facing a duty-station reassignment or were a widower or recent divorcée in need of money.

3. In furtherance of the scheme to defraud, the perpetrators established multiple telephone numbers using a web-based phone system. These telephone numbers were often selected to include the numbers "3229" after the area code and prefix. The numbers "3229" correspond to the letters "E-B-A-Y" on standard telephones. Victim-buyers were then referred to a fictitious eBay representative at those telephone numbers to complete their purchases.

4. Having enticed the victims to purchase the vehicles through below-market pricing and claims of transactional security, the perpetrators of the scam then sent invoices to the buyers that appeared to be from eBay. The perpetrators also provided bank account information and directed the buyers to wire funds to any number of bank accounts (typically opened in the name of fictitious business entities) that were controlled, in whole or in part, by **SHIMIZU**, T.B., D.R., and other individuals who established nominee-accounts at their direction.

5. In furtherance of the scheme to defraud, **SHIMIZU** instructed T.B., D.R., and other individuals to register business entities with names that were designed to appear to have some relation to eBay's Buyer Protection Program or eBay Financial Services when those names are truncated—for example, EEBPA LLC and Excellent Fast Sales LLC—when, in fact, those entities had no relation to eBay. Victim-buyers, however, believed they were wiring funds to be held in escrow as part of eBay's Buyer Protection Program. At times, the perpetrators used aliases and fake personal identifications when registering these nominee business entities and their related bank accounts.

6. In furtherance of the scheme to defraud, **SHIMIZU**, T.B., D.R., and others established and used multiple bank accounts in their own names and in the names of their nominee companies. In total, **SHIMIZU**, T.B., D.R., and others funneled more than $10.6 million in proceeds from the vehicle-sale scam, from nearly 850 victims located throughout the United States, into these accounts. These funds were not used for the purposes claimed by perpetrators of the scam, and the vehicles were not provided to the victims.

7. In furtherance of the scheme to defraud, the perpetrators promptly withdrew the victims' funds from these accounts in cash, cashiers' checks, or other electronic transfers. **SHIMIZU**, T.B., D.R., and others then used the victims' funds to: (1) transfer money to other co-conspirators via FedEx; (2) transfer money to other co-conspirators via in-person "cash drops"; (3) redeposit money into other bank accounts under the control of various co-conspirators; and (4) purchase bitcoins. These financial transactions were designed, in whole or in part, to conceal the nature, location, source, ownership, and control of the fraud proceeds. Several of these transactions involved criminally derived property of a value greater than $10,000.00.

## RELEVANT INDIVIDUALS, ENTITIES, AND ACCOUNTS

8. In furtherance of the scheme to defraud, the perpetrators used their own personal bank accounts; formed several nominee business entities, many of which were shell companies without legitimate assets or operations; and opened multiple bank accounts in the names of those nominee companies.

9. For example, sometime prior to 2015, **SHIMIZU** opened Bank of America account x3675 in his own name.

10. Likewise, on November 11, 2014, T.B. opened Bank of America account x4055 in his own name.

11. Between March 26, 2015, and April 14, 2015, **SHIMIZU** withdrew roughly $10,300 in cash from Bank of America account x3675 and deposited it into T.B.'s Bank of America account x4055 over the course of several withdrawals/deposits at bank branches in San Francisco, California, and Danville, California.

12. At **SHIMIZU's** direction, T.B. then formed EEBPA LLC, a limited liability shell company, and registered it with the Ohio Secretary of State's office, in the Southern District of Ohio, on March 27, 2015. T.B. listed himself as the point of contact, billing name, and sole member of EEBPA LLC. T.B. then opened at least ten bank accounts in EEBPA LLC's name, including Bank of America account x0488 (opened on 4/8/2015), for which T.B. was the sole signatory on the accounts. T.B. seeded these bank accounts with the deposits that **SHIMIZU** previously made into T.B.'s personal account at Bank of America (x4055). Additionally, on April 14, 2015, **SHIMIZU** made a $2,725 cash withdrawal from Bank of America account x3675 and redeposited the same amount into EEBPA Bank of America account x4055 at a bank branch in San Francisco, California.

13. Throughout this conspiracy, **SHIMIZU** directed T.B., D.R., and other individuals to form and register several other limited liability corporations ("LLCs") in Ohio, the District of Columbia, Florida, and elsewhere. Most of these LLCs had similar sounding names, designed to appear affiliated with eBay, including EBPA LLC (Washington, D.C.), EEBP LLC (Florida), and Excellent Fast Shipping LLC (Florida), to name a few. Oftentimes, T.B., D.R., and others formed and registered the LLCs, but they then listed a different member of the conspiracy (a "mule") as the relevant LLC's member, manager, organizer, and/or agent. At the direction of **SHIMIZU**, T.B., D.R., and others, the mule listed for each LLC then opened and operated numerous bank accounts in that LLC's name (the "mule accounts").

14. For example, on September 10, 2018, T.B. formed Excellent Fast Sales LLC, a limited liability shell company, and registered it with the Florida Secretary of State's Office. T.B. listed an alias of "Jack Johnson" as the manager and registered agent for Excellent Fast Sales LLC. D.R., using the same alias of "Jack Johnson" and a fake driver's license, then opened at least six bank accounts in Excellent Fast Sales LLC's name, including Bank of America account x4366 (opened on 9/26/18) for which "Jack Johnson" was the sole signatory.

15. Likewise, on April 1, 2019, D.R. formed Express Nationwide Shipping LLC, a limited liability shell company, and registered it with the Florida Secretary of State's Office. D.R. listed R.B. (a "mule") as the manager and registered agent for Express Nationwide Shipping LLC. R.B. then opened at least five bank accounts in Express Nationwide Shipping LLC's name, including JPMorgan Chase Bank account x5767 (opened on 4/11/19), for which R.B. was the sole signatory.

## THE SCHEME TO DEFRAUD

The following examples are illustrative of how the scheme to defraud typically operated. They are not an exhaustive description of the scheme to defraud or how it operated.

### Buyer "A.P."

16. A.P., a resident of the Southern District of Ohio, was interested in purchasing a Polaris all-terrain vehicle ("ATV"). In April 2015, A.P. came across an advertisement on Craigslist.org for such an ATV. The seller represented that he was in the U.S. Air Force, and that he was being transferred from Utah to Alaska. The seller stated that he was looking to sell his ATV, which was worth approximately $13,000, for just $7,200. A.P. corresponded with the seller, and the two ultimately agreed on a purchase price of $7,200.

Case: 2:21-cr-00147-EAS Doc #: 5 Filed: 08/04/21 Page: 6 of 11 PAGEID #: 12

17. Afterward, A.P. was contacted by "Alex Taggert," who claimed that he worked for eBay Finance. A.P. later received an email detailing the terms of the transaction, and Taggert called A.P. to provide the bank account and routing number for where A.P. was to wire the funds. Taggert told A.P. to wire the funds to an EEBPA bank account, and he stated that EEBPA stood for eBay Electronic Buyer Protection. A.P. was informed that the ATV would be shipped once EEBPA received the funds, and that the money would be held in escrow for five days following shipment to allow A.P. to inspect the vehicle.

18. On April 22, 2015, A.P. sent a $7,200 wire transfer from his Ally Bank account to the EEBPA bank account, as directed. The same day, EEBPA Bank of America account x0488 (for which T.B. was the sole signatory) received a $7,200 wire transfer from A.P.

19. After wiring the funds, A.P. received a confirmation email from Taggert that the funds had been received. A.P., however, never received the Polaris ATV. A.P. then contacted Taggert (by phone) and the seller (by email) to cancel the transaction and receive his refund. Despite receiving vague assurances from both Taggert and the seller, A.P. never received a refund.

20. On April 22, 2015, T.B. made a $7,200 cash withdrawal from EEBPA Bank of America account x0488 at a bank branch in Maryland. T.B. kept a portion of the fraud proceeds for himself and remitted the rest to **SHIMIZU** and other members of the conspiracy.

### Buyer "R.K."

21. R.K., a resident of the Southern District of Ohio, was also interested in purchasing a Polaris ATV. In April 2015, R.K. came across an advertisement on Craigslist.org for such an ATV. The seller stated that he was in the Air Force, was moving to Alaska, and, therefore, had to sell the vehicle. The seller offered the ATV for $7,200, which was less than the average asking price for similar ATVs, which R.K. believed to be around $10,000.

6

22. R.K. was told that the sale would take place using eBay and was given a telephone number to call. When R.K. called the number, he heard a voice message stating that he had reached eBay, and he was then put in touch with someone whom he believed to be an eBay representative. R.K. received instructions from the eBay representative over the phone on where to wire the funds. R.K. also received an invoice that appeared to be from eBay for the purchase.

23. On April 23, 2015, R.K. sent a $7,200 wire transfer from his Wright-Patt Credit Union account to the bank account, as directed. The same day, EEBPA Bank of America account x0488 (for which T.B. was the sole signatory) received a $7,200 wire transfer from R.K.

24. Sometime later, R.K. learned that he had been defrauded, and he contacted his credit union to stop the wire transfer. R.K.'s credit union was unable, however, to stop the wire transfer in time. R.K. later attempted to contact the listed seller and the eBay representative, but he was unable to do so. R.K. never received the Polaris ATV, nor did he receive a refund for his attempted purchase.

25. On April 23, 2015, T.B. made a $7,200 cash withdrawal from EEBPA Bank of America account x0488 at a bank branch in Maryland. T.B. kept a portion of the fraud proceeds for himself and remitted the rest to **SHIMIZU** and other members of the conspiracy.

### Buyer "R.D."

26. R.D., a resident of Colorado, was interested in purchasing a pickup truck. In October 2018, R.D. came across an advertisement on Craigslist.org for such a truck. The seller represented that her husband had recently died, and that she was trying to sell his truck. The truck was originally listed for roughly $25,000—which R.D. believed was between $5,000 and $10,000 below its fair market value. R.D. corresponded with the seller, and the two ultimately agreed on a purchase price of $25,200.

7

27. Afterward, R.D. was contacted by "Alex," who represented that he worked for eBay. R.D. later received an email detailing the terms of the transaction, and "Alex" instructed him over the phone as to the bank account and routing number for where R.D. was to wire the funds. "Alex" told R.D. to wire the funds to an "EFS" account where those funds would be held in escrow for five days following shipment to allow R.D. to inspect the truck.

28. On October 15, 2018, R.D. sent a $25,200 wire transfer from his Eastern Colorado Bank account to the EFS account, as directed. The same day, Excellent Fast Sales Bank of America account x4366 (for which D.R.'s alias of "Jack Johnson" was the sole signatory) received a $25,200 wire transfer from R.D.

29. After wiring the funds, R.D. received a confirmation email purportedly sent from eBay Motors indicating that the funds had been received. R.D., however, never received the pickup truck. R.D. attempted to contact the seller and "Alex," from eBay, but was unsuccessful in seeking a refund.

30. Between October 15 and 16, 2018, $25,000 was withdrawn from Excellent Fast Sales Bank of America account x4366 in six separate transactions—including five electronic funds transfers and a $7,500 ATM cash withdrawal in Miami, Florida. D.R. kept a portion of the fraud proceeds for himself and remitted the rest to **SHIMIZU** and other members of the conspiracy.

### Buyer "A.W."

31. A.W., a resident of Oregon, was interested in purchasing a food truck. In May 2019, A.W. came across an advertisement on Craigslist.org for a 2017 Freightliner Food Truck. The seller represented that she was recently divorced, and that she was just trying to sell the food truck as the last part of that divorce. The truck was listed for $23,000. A.W. corresponded with the seller, and the two ultimately agreed on a purchase price of $23,000.

8

32. Afterward, ~~R.B.~~ A.W. was contact by "Alex," who represented that he worked for eBay and would be assisting in processing the sale. ~~R.B.~~ A.W. later received an email detailing the terms of the transaction from what appeared to be an eBay Financial email account. "Alex" instructed A.W. as to where to wire the funds, and "Alex" promised that those funds would be held in escrow for five days following shipment to allow A.W. to inspect the truck.

33. On May 20, 2019, A.W. sent a $23,000 wire transfer from his Wells Fargo Bank account to the bank account, as directed. The same day, Express Nationwide Shipping JPMorgan Chase Bank account x5767 (for which R.B. was the sole signatory) received a $23,000 wire transfer from A.W.

34. After wiring the funds, A.W. received a confirmation email indicating that the funds had been received, and that the food truck was being shipped. A.W., however, never received the food truck. A.W. attempted to contact the seller and "Alex," from eBay, but was unsuccessful in seeking a refund.

35. Between May 20 and 22, 2019, $23,150 was withdrawn from Express Nationwide Shipping JPMorgan Chase Bank account x5767 in five separate transactions—including three electronic funds transfers and two cash withdrawals. R.B. and D.R. kept a portion of the fraud proceeds for themselves and then remitted the rest to **SHIMIZU** and other members of the conspiracy.

## COUNT 1
### (Money Laundering Conspiracy)

36. Paragraphs 1 through 35 are incorporated here.

37. From at least 2015 through October 2019, the precise dates being unknown to the Grand Jury, in the Southern District of Ohio and elsewhere, the defendant, **LEO SHIMIZU**, T.B., and D.R., knowingly conspired and agreed with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of 18 U.S.C. §§ 1956 and 1957—namely:

    a. to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity—that is, wire fraud—knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

    b. to knowingly engage and attempt to engage, in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity—that is, wire fraud—in violation of 18 U.S.C. § 1957.

**All in violation of 18 U.S.C. § 1956(h).**

## FORFEITURE ALLEGATION

38. Paragraphs 1 through 37 are incorporated here for purposes of alleging forfeitures to the United States.

39. Upon conviction of Count 1 of this Indictment (money laundering conspiracy), the defendant, **LEO SHIMIZU**, shall forfeit to the United States, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property, including, but not limited to, a sum of money equal to the amount of proceeds he obtained as a result of the offense in the form of a forfeiture money judgment.

40. If, as a result of any act or omission of the defendant, **LEO SHIMIZU**, the forfeitable property so described, or any portion thereof:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of substitute property of the defendant, **LEO SHIMIZU**, up to the value of the forfeitable property, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

**Forfeiture pursuant to 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(1), and Rule 32.2 of the Federal Rules of Criminal Procedure.**

                                              **A TRUE BILL**

                                              s/ Foreperson
                                              **FOREPERSON**

**VIPAL J. PATEL**
**ACTING UNITED STATES ATTORNEY**

**NOAH R. LITTON (0090479)**
**Assistant United States Attorney**